IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAFARI CLUB INTERNATIONAL | ) | |
| 501 Second St., NE | ) | |
| Washington D.C. 20002 | ) | Case No. _____ |
| | ) | |
| SAFARI CLUB INTERNATIONAL | ) | |
| FOUNDATION | ) | |
| 501 Second St., NE | ) | |
| Washington D.C. 20002 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, in his official | ) | |
| capacity; H. DALE HALL, in his official | ) | |
| capacity; U.S. FISH AND WILDLIFE | ) | |
| SERVICE | ) | |
| 1849 C Street, NW | ) | |
| Washington D.C. 20240 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**COMPLAINT FOR DECLARATIVE AND INJUNCTIVE RELIEF**

I.      INTRODUCTION

1.      On May 15, 2008, the United States Secretary of the Interior ("Secretary") and

the U.S. Fish and Wildlife Service (the "Service") listed the polar bear as a threatened

species throughout its range under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-

1544.  Determination of Threatened Status for the Polar Bear (Ursus maritimus) Throughout

its Range; Final Rule, 73 Fed. Reg. 28212-28303 (May 15, 2008) ("Final Rule").  As part of

the Final Rule, the FWS determined that "authorization for the import of sport-hunted

trophies would no longer be available under section 104(c)(5) of the [Marine Mammal

Protection Act ("MMPA")]." *See, e.g., id.* at 28242.  Before the Final Rule and this

determination, the FWS authorized the import of sport-hunted polar bear trophies from

approved populations in Canada under the MMPA.  16 U.S.C. § 1374(c)(5).

2.      Plaintiffs Safari Club International ("SCI") and Safari Club International

Foundation ("SCIF") (collectively "SCI and SCIF") bring this action against Defendants

Dirk Kempthorne, in his official capacity as United States Secretary of the Interior; H. Dale

Hall, in his official capacity as Director of the United States Fish and Wildlife Service; and

the United States Fish and Wildlife Service (collectively "FWS").  This suit challenges the

FWS's legal determination that the listing of the polar bear as threatened under the ESA

creates a ban on the import of sport-hunted polar bear trophies otherwise legal under the

MMPA, 16 U.S.C. § 1374(c)(5).  SCI and SCIF bring this suit under the Administrative

Procedure Act, 5 U.S.C. §§ 551 *et seq.* ("APA") and challenge actions taken under the

MMPA.

3.      Until the recent action by the FWS detailed in this Complaint, U.S. hunters,

including members of SCI, could import polar bear trophies into the United States.  An

amendment to the MMPA enacted in 1994, 16 U.S.C. § 1374(c)(5), authorizes such imports

under certain conditions.  Since 1994, over 900 U.S. hunters have relied on this provision to

receive import permits and import polar bear trophies legally harvested in Canada.

4.      Including in March, April, and May of 2008, members of SCI have

successfully sport-hunted polar bears from several of the six populations of polar bears in

Canada approved for imports under the MMPA, 16 U.S.C. § 1374(c)(5).  Many of these

individuals submitted to the FWS applications to import polar bear trophies into the United

States.  The FWS has noticed in the Federal Register for a 30-day comment period the

applications of at least 11 SCI members.  73 Fed. Reg. 18808-09 (April 7, 2008); 73 Fed.

Reg. 21979-80 (April 23, 2008); 73 Fed. Reg. 21980-81 (April 23, 2008); 73 Fed. Reg.

21981-82 (April 23, 2008); 73 Fed. Reg. 23266-67 (April 29, 2008).  Other members of SCI

who also successfully hunted polar bears, including during the months of March, April and

May of 2008, have not yet submitted their applications for permits to the FWS.  On

information and belief, other members of SCI have 2009 and 2010 polar bear hunts

scheduled and paid for and for which they have not yet submitted permit applications.  On

information and belief, the FWS has informed members of SCI and others that it will not be

processing any permit applications to allow the import of polar bears now that the species is

listed as "threatened" under the ESA.

   5.  The FWS recognized in the Final Rule the benefits that U.S. sport hunting

brings to international polar bear conservation, including:

> "the important contribution to conservation that scientifically based
> sustainable use harvest programs can have";
>
> "the past significant benefits to polar bear management in Canada that have
> accrued as a result of the 1994 amendments to the MMPA that allow U.S.
> citizens who legally sport-harvest a polar bear from an MMPA-approved
> population to bring their trophies back into the United States";
>
> "income from fees collected for trophies imported into the United States are
> directed by statute to support polar bear research and conservation programs
> that have resulted in conservation benefits to polar bears in the Chukchi Sea
> region"; and
>
> "hunting provides direct economic benefits to local native communities that
> derive income from supporting and guiding hunters, …."

73 Fed. Reg. at 28236.

   6.  Because polar bears, except for those within Alaska borders, are under the

jurisdiction of foreign nations, the FWS has no direct jurisdiction to advance the conservation

of these animals.  U.S. sporthunting and importation of polar bears represent one of the few if not the only guaranteed conservation impact that the FWS/United States has on foreign members of the species.

7.     The FWS's determination that these imports are no longer allowed undermines these benefits.

8.     The FWS's determination that polar bear importation is no longer allowed is unlawful for at least four reasons:

- the MMPA provision expressly authorizing the import of sport-hunted trophies from approved populations remains in effect, was enacted later than the import ban on depleted species, and is the more specific to polar bears and importation, and therefore supersedes any import ban arguably arising from the ESA listing;

- the FWS did not "by regulation published in the Federal Register, designate [the polar bear] as a depleted species or stock," as required by the provisions of the MMPA barring imports of depleted species, 16 U.S.C. § 1372(b)(3) and 16 U.S.C. § 1371(a)(3)(B), and did not make the requisite finding for such a designation.

- if the Final Rule is deemed to have "designated" the polar bear as a "depleted" species under the MMPA, then the FWS failed to give adequate notice that it was taking this action and failed to give the public (including SCI and SCIF) an opportunity to comment on this designation; and

- if the Final Rule is deemed to have "designated" the polar bear as a "depleted" species under the MMPA, the import ban in the MMPA only applies to animals taken after such designation.

9.    SCI and SCIF seek relief (a) declaring the FWS's determination erroneous, (b) setting aside the portions of the Final Rule establishing an import ban, and (3) ordering the FWS to continue accepting and processing polar bear import permit applications under 16 U.S.C. § 1374(c)(5) and other applicable law.

## II.    JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action under the APA, 5 U.S.C. § 702 (judicial review of final agency action) and 28 U.S.C. § 1331 (federal question jurisdiction). The Court can grant declaratory and injunctive relief under 28 U.S.C. § 2201, 28 U.S.C. § 2202, and 5 U.S.C. §§ 701-706.

11.    Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) as this action is brought against an agency of the United States and against officers of agencies of the United States in their official capacities; decisions and actions challenged here were made, at least in part, in this District; Plaintiffs SCI and SCIF maintain an office in this District; and no real property is involved.

12.    SCI and SCIF and members of SCI are currently adversely affected and aggrieved by the actions of the FWS in determining that imports of sport-hunted trophies from approved populations in Canada are no longer allowed and in refusing to further process or accept applications for such import permits.  These actions also harm SCI and SCIF's interests in polar bear conservation and management efforts supported by U.S. sport

hunters in Canada, who may abandon sport-hunting of polar bears if imports are not allowed.

SCI and SCIF are entitled to judicial review of the actions challenged here under the APA.

13.    SCI and SCIF have standing to bring this action.

14.    The judicial review provisions of the APA waive the Federal government's

sovereign immunity.  5 U.S.C. § 702.

## III.    PARTIES

15.    Safari Club International is a nonprofit corporation incorporated in the State

of Arizona, operating under § 501(c)(4) of the Internal Revenue Code, with principal offices

and place of business in Tucson, Arizona.  SCI maintains an office in Washington D.C.  Its

membership includes approximately 53,000 individuals from the United States and many of

the countries around the world.  Its missions are the conservation of wildlife, protection of

the hunter, and education of the public concerning hunting and its use as a conservation tool.

Members of SCI have hunted polar bears in the past, including recently, and intend to hunt

polar bears in the future.  All or most of them desire to import the trophy of any polar bear

they have harvested or will harvest into the United States as a trophy.

16.    SCI carries out its conservation mission through its sister organization, Safari

Club International Foundation.  SCIF is a non-profit corporation, incorporated in the State of

Nevada, operating under § 501(c)(3) of the Internal Revenue Code, with principal offices and

place of business in Tucson, Arizona.  SCIF maintains an office in Washington D.C.  Its

missions are conservation of wildlife, education of the public concerning hunting and its use

as a conservation tool, and humanitarian services.  The conservation mission of SCIF is: (a)

to support the conservation of the various species and populations of game animals and other

wildlife and the habitats on which they depend, and (b) to demonstrate the importance of

hunting as a conservation and management tool in the development, funding and operation of wildlife conservation programs.

17.    SCI and SCIF are organizations that promote the principle and practice of sustainable use conservation.  SCI and SCIF's and SCI members' interests include the sound management and conservation of polar bears and SCI members' ability to import polar bear trophies into the United States from Canada, as was allowed under the law before the listing of the polar bear as threatened under the ESA on May 15, 2008.  SCI and SCIF possess sufficient interests in the subject matter of this litigation to establish standing.

18.    SCI and SCIF commented at every available opportunity for public comments on the proposed listing.  SCI and SCIF submitted extensive written comments in April 2006, April 2007, and October 2007.  In March 2007, SCI and SCIF presented oral testimony on the proposed listing at a hearing in Washington D.C.

19.    SCI and SCIF intend, shortly after the filing of this Complaint, to submit a 60-day notice letter to the Secretary and the Service regarding violations of the ESA in adopting the Final Rule, as required by the citizen suit provision of the ESA.  16 U.S.C. § 1540(g). After the expiration of the 60 days, if the Secretary and the FWS have not remedied the violations, SCI and SCIF may bring an action in this Court through the supplementation of this Complaint.

20.    Defendant Dirk Kempthorne is the Secretary of the Interior and has ultimate responsibility for the administration of the ESA and MMPA within the United States Department of the Interior.  He signed the Final Rule.  He is sued in his official capacity.

21.    Defendant H. Dale Hall is the Director of the Fish and Wildlife Service.  He has responsibility for the administration and implementation of the ESA and MMPA,

including with regard to the listing of the polar bear and issuance of polar bear import permits. He is sued in his official capacity.

22.     Defendant U.S. Fish and Wildlife Service is an agency within the Department of the Interior and is authorized to administer and implement the ESA and MMPA. The Secretary of the Interior has delegated authority to the Service in regard to issuing permits for the importation of polar bears from Canada.

## IV.     LEGAL BACKGROUND

### A.     The Endangered Species Act

23.     The purposes of the ESA "are to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, to provide a program for the conservation of such endangered species and threatened species, and to take such steps as may be appropriate to achieve the purposes of the treaties and conventions set forth in subsection (a) of this section." 16 U.S.C. § 1531(b).

24.     Among other things, the ESA provides for the listing and de-listing of species as either endangered or threatened. *Id.* § 1533. A species is "endangered" if the agency determines it "is in danger of extinction throughout all or a significant portion of its range …." *Id.* § 1532(6). A species is "threatened" if the agency determines it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20). In the Final Rule, the FWS determined that the polar bear was "threatened" throughout its range.

25.     The ESA provides protection to "endangered" species, subject to exceptions. *See, e.g.,* 16 U.S.C. § 1538. The ESA authorizes the Secretary (and the Service by delegation) to issue regulations to protect a "threatened" species when it is listed under

Section 4 of the ESA. 16 U.S.C. § 1533(d). The Secretary has promulgated regulations that make most of the prohibitions of Section 9 (by statute only applicable to "endangered" species) also applicable to "threatened" species. 50 C.F.R. § 17.31. Thus, the general ESA prohibition on imports of "threatened" species is based on regulation and not statute.

26.    The ESA expressly provides that the import of "threatened" species shall be presumed to not be in violation of the ESA or any regulation issued under the ESA if certain conditions are met. 16 U.S.C. § 1538(c)(2). The conditions include that the species is listed in Appendix II of the Convention on International Trade in Endangered Species of Wild Fauna and Flora, signed on March 3, 1973 ("CITES"), the taking and exportation complies with CITES, certain provisions of ESA Section 9 are complied with, and the importation is not in the course of a commercial activity. 16 U.S.C. § 1538(c)(2). The polar bear is listed on Appendix II of CITES and thus an importation of a polar bear in compliance with 16 U.S.C. § 1538(c)(2) would not violate the ESA. *See* Final Rule, 73 Fed. Reg. at 28242.

### B.    The Marine Mammal Protection Act

27.    Subject to numerous and broad exceptions, the MMPA prohibits the take and importation of all marine mammals. The polar bear is considered a marine mammal. 16 U.S.C. § 1362(6).

28.    Pursuant to amendments adopted by Congress in 1994, the MMPA expressly authorizes the issuance of permits "for the importation of polar bear parts (other than internal organs) taken in sport hunts in Canada to an applicant which submits with its permit application proof that the polar bear was legally harvested in Canada by the applicant." *Id.* § 1374(c)(5)(A). The Secretary (and by delegation the Service) "shall" issue such a permit if the Service finds that:

(i) Canada has a monitored and enforced sport hunting program consistent
with the purposes of the Agreement on the Conservation of Polar Bears;
(ii) Canada has a sport hunting program based on scientifically sound quotas
ensuring the maintenance of the affected population stock at a sustainable
level;
(iii) the export and subsequent import are consistent with the provisions of
the Convention on International Trade in Endangered Species of Wild Fauna
and Flora and other international agreements and conventions; and
(iv) the export and subsequent import are not likely to contribute to illegal
trade in bear parts.

*Id.* The Service has made these findings for six populations of polar bear in Canada.

http://www.fws.gov/international/pdf/polarbearsporthunted.pdf.

29.     The MMPA requires that the recipient of any import permit for sport-hunted

polar bear trophies pay $1,000 for "use in developing and implementing cooperative research

and management programs for the conservation of polar bears in Alaska and Russia …." 16

U.S.C. § 1374(c)(5)(B); see also

http://www.fws.gov/international/pdf/polarbearsporthunted.pdf.

30.     Since 1994, the FWS has issued over 900 permits for the import of sport-

hunted trophies into the United States. The issuance of these permits has generated over

$900,000 for polar bear research and management programs.

31.     The MMPA, as enacted in 1972, provides for certain prohibitions in regard to

species or stocks that are "depleted." For purposes of the MMPA, "the term 'depletion' or

'depleted' means any case in which –

**(A)** the Secretary, after consultation with the Marine Mammal Commission and
the Committee of Scientific Advisors on Marine Mammals established under
subchapter III of this chapter, determines that a species or population stock is
below its optimum sustainable population;
**(B)** a State, to which authority for the conservation and management of a
species or population stock is transferred under section 1379 of this title,
determines that such species or stock is below its optimum sustainable
population; or

10

(**C**) a species or population stock is listed as an endangered species or a threatened species under the Endangered Species Act of 1973 [16 U.S.C. 1531 et seq.].

16 U.S.C. § 1362(1). The MMPA defines the term "optimum sustainable population." *Id.* § 1362(9). The MMPA establishes that the designation of a "depleted" species or stock under 16 U.S.C. § 1362(1)(A) specifically must be made by notice in the Federal Register and through rulemaking. In explaining the nonapplicability of certain prohibitions, the MMPA discusses the "date on which the Secretary publishes notice in the Federal Register of his proposed rulemaking with respect to the designation of the species or stock concerned as depleted." *Id.* § 1372(d)(1).

32.    In the Final Rule, the FWS did not make a "depleted" finding (regarding the species being above or below "optimum sustainable population") or designate the polar bear as a "depleted" species under 16 U.S.C. § 1362(1)(A). In the Final Rule, and the proposed rule and rulemaking leading to the Final Rule, the FWS did not give the public notice that it was proposing to make a "depleted" finding, to designate the polar bear as "depleted" under 16 U.S.C. § 1362(1)(A), or to ban the import of sport-hunted polar bear trophies under the MMPA. The FWS did not give the public an opportunity to comment on any of these actions. Instead, in the Final Rule, the FWS merely noted that "under the MMPA, the polar bear will be considered a 'depleted' species on the effective date of this listing." 73 Fed. Reg. at 28236.

33.    The MMPA prohibits the importation of any marine mammal if such mammal was "taken from a species or population stock which the Secretary has, by regulation published in the Federal Register, designated as a depleted species or stock;…." 16 U.S.C. § 1372(b); *see also id.* § 1371(a)(3)(B) (no import permit for any

species "designated by the Secretary as depleted").   The Secretary has not designated

the polar bear as "depleted" in a regulation published in the Federal Register.

###   C.    The Administrative Procedure Act

34.    The APA provides for judicial review of final agency action by persons

"aggrieved" by the action.  5 U.S.C. § 702.

35.    It also provides standards applicable when a Federal agency proposes and

adopts final rules and regulations.   5 U.S.C. § 553; *id.* § 551(4).

36.    Under the APA, Federal agencies must provide "general notice" of any

"proposed rule making" to the public through publication in the Federal Register.  That

notice must include "(1) a statement of the time, place, and nature of the public rule making

proceedings; (2) reference to the legal authority under which the rule is proposed; and (3)

either the terms and substance of the proposed rule or a description of the subjects and issues

involved."  *Id.*  § 553(b).

37.    The APA requires that the agency "give interested persons an opportunity to

participate in the rule making through submission of written data, views, or arguments with

or without opportunity for oral presentation.  After consideration of the relevant matter

presented, the agency shall incorporate in the rules adopted a concise general statement of

their basis and purpose."  *Id.* § 553(c).

## V.    FACTUAL BACKGROUND

38.    The FWS, in the Final Rule, signed by Defendant Dirk Kempthorne, listed the

polar bear as a "threatened species" under the ESA, effective on May 15, 2008.

39.    The Final Rule repeatedly stated that imports of polar bears taken in sport

hunts in Canada would no longer be allowed.  *See, e.g.,* 73 Fed. Reg. at 28242, 28302.

40.     Members of SCI and others have sported hunted polar bear from approved populations in Canada, including in March, April, and May of 2008, and desire to import their trophies.  On information and belief, the Service has informed at least some of these individuals that it will no longer be processing import permit applications because of the listing of the polar bear as a threatened species.  On information and belief, other SCI members have 2009 and 2010 polar bear hunts scheduled and paid for.  On information and belief, the Service has stopped processing applications for polar bear import permits as of May 15, 2008.  Without an import permit from the Service, these individuals cannot import their legally hunted polar bear trophies into the United States.

41.     The sport-hunting and importation of polar bears benefits polar bear conservation and management in a number of ways.  As noted above, each issued import permit requires the payment of $1,000 to the Service for polar bear research and management in Alaska and Russia.

42.     U.S. hunters in particular pay upwards of $40,000-50,000 per polar bear hunt. A large percentage of those funds go to the local native communities, who provide guiding services, goods, and other services to the foreign hunters.  This infusion of cash into the cash-strapped native communities provides another incentive for these people to accept the Western-based science and management that facilitates polar bear conservation and that is required before the Service will approve a population for import.  The local people who co-exist with the polar bear can help ensure that harvest of polar bears falls within established quotas and, by whatever means, is done in a sustainable way.  As noted above, the FWS, in the Final Rule and elsewhere, has recognized the benefits of sport hunting of polar bears.

43.     Sport hunting by U.S. and other foreign hunters in Canada does not increase polar bear mortality in any given year.  Canadian authorities establish quotas for polar bear populations.  These quotas are assigned to the local communities.  The local communities use the majority of their quota (provided as "tags" representing the number of bears that can be taken, by whatever means, by that community) for subsistence and management purposes. The communities sell a number of the tags to sport hunters.  In most cases, the meat and other non-trophy portions of the harvested polar bear remain with the native communities to be used for subsistence purposes.  If U.S. hunters did not purchase these tags because of the FWS-imposed ban on imports, the native communities will sell them to other foreign hunters or use the tags themselves for subsistence purposes.   If U.S. hunters do not purchase the tags, the value of the individual polar bears to the residents of the native communities are likely to diminish, as are the incentives for community residents to strictly accept the quota system and the science behind it.

## VI.    CLAIMS FOR RELIEF

### First Claim for Relief
### (Import Ban Contrary to Express Authorization of Imports)
### Violation of the APA and MMPA

44.     SCI and SCIF reallege and incorporate by reference all the allegations of this Complaint, as though fully set forth below.

45.     The FWS's determination that the import of polar bear trophies legally hunted in Canada is prohibited by the MMPA is arbitrary and capricious and contrary to law.  A provision of the MMPA, 16 U.S.C. § 1374(c)(5)(A), enacted in 1994, expressly authorizes the issuance of polar bear import permits and mandates their issuance if certain conditions are met.  The conditions have been met in general and have been or could be met for the

14

members of SCI who have applications before the FWS.  The 1994 amendment to the MMPA was enacted later in time and is more specific to polar bears than the general prohibition against importing depleted species, enacted in 1972.  The import authorization of 16 U.S.C. § 1374(c)(5)(A) controls instead of any conflicting provision barring the import of species designated as "depleted."

46.      Any regulation that purports to ban the import of polar bears if they are deemed "depleted" under the MMPA or listed under the ESA is contrary to the statutory authorization and mandate to permit the import of sport-hunted polar bear trophies if certain conditions are met.

47.      Until the FWS's import ban determination became effective on May 15, 2008, individuals could import polar bear trophies into the United States if they complied with 16 U.S.C. § 1374(c)(5)(A) and other applicable law.

48.      SCI and SCIF and members of SCI are harmed and aggrieved by this final action because members of SCI cannot import legally harvested polar bears from Canada.  Further, lost will be the conservation benefits of the sport hunting that will no longer occur if an import ban is in place.  No other remedy at law exists.

49.      These actions by the Secretary constitute a violation of the MMPA and the APA.  5 U.S.C. § 706(2).

50.      The remedies requested in this Complaint would remedy SCI and SCIF's and SCI's members' injuries, as outlined in this Complaint.

**Second Claim for Relief**
**(Import Ban Not Supported by Designation of Polar Bear as Depleted)**
**Violation of the APA and MMPA**

51.     SCI and SCIF reallege and incorporate by reference all the allegations of this Complaint, as though fully set forth below.

52.     The FWS's determination that the import of polar bear trophies legally hunted in Canada is prohibited by the MMPA is arbitrary and capricious and contrary to law.  The provisions of the MMPA that prohibit the importation of "depleted" species only applies to species for which the Secretary of the Interior, Defendant Kempthorne, "has, by regulation published in the Federal Register, designated as a depleted species or stock."  16 U.S.C. § 1372(b)(3); *id.* § 1371(a)(3)(B).

53.     The Secretary has not designated the polar bear as a "depleted species" and has not published any such designation in the Federal Register.

54.     The listing of the polar bear as a threatened species under the ESA, which was done through a regulation published in the Federal Register, does not constitute a "designation" of the polar bear as a depleted species under the MMPA.  The ESA listing only establishes the polar bear as a depleted species by definition.  *See id.* § 1362(1)(C).  The listing of the polar bear as threatened under the ESA does not establish that the polar bear is "below its optimum sustainable population," as required for the designation of the species as "depleted."  The finding required to list a species as threatened under the ESA does not match the finding required to designate a species as depleted under the MMPA.  Compare 16 U.S.C. §§ 1533(a)(1), 1532(20) with 16 U.S.C. § 1362(1), (9).  The FWS listed the polar bear as threatened based on projections of population status and threats in 45 years, not on current overall population numbers.

16

55.    The FWS never made the finding required under the MMPA for designating a species as "depleted" and never gave the public notice that it was considering such a finding or that it was considering "designating" the polar bear as a depleted species.  On information and belief, the FWS could not find that the polar bear is currently below its "optimum sustainable population," as defined in the MMPA.

56.    Until the FWS's import ban determination became effective on May 15, 2008, individuals could import polar bear trophies into the United States if they complied with 16 U.S.C. § 1374(c)(5) and other applicable law.

57.    SCI and SCIF and members of SCI are harmed and aggrieved by this final action because members of SCI cannot import legally harvested polar bears from Canada. Further, lost will be the conservation benefits of the sport hunting that will no longer occur if an import ban is in place.  No other remedy at law exists.

58.    These actions by the Secretary constitute a violation of the MMPA and the APA.  5 U.S.C. § 706(2).

59.    The remedies requested in this Complaint would remedy SCI and SCIF's and SCI's members' injuries, as outlined in this Complaint.

**Third Claim for Relief**
**(No Rulemaking Occurred For "Depleted" Designation)**
**Violation of the APA**

60.    SCI and SCIF reallege and incorporate by reference all the allegations of this Complaint, as though fully set forth below.

61.    The FWS's determination that the import of polar bear trophies legally hunted in Canada is prohibited by the MMPA is arbitrary and capricious, failed to observe proper procedure, and is contrary to law.  The provisions of the MMPA that prohibit the importing

of "depleted" species only apply to species for which the Secretary of the Interior, Defendant Kempthorne, "has, by regulation published in the Federal Register, designated as a depleted species or stock." 16 U.S.C. § 1372(b)(3); *Id.* § 1371(a)(3)(B).

62.    If the Final Rule is deemed to be a "designation" of the polar bear as a "depleted species," the FWS failed to give the public adequate notice and an opportunity to comment on this aspect of the Final Rule. This "designation" is not a logical outgrowth of the proposed rule, was not sought as a part of the original petition to list the species, and was not commented on by the public or explained in the Final Rule.

63.    The FWS did not ask for comments on and the rulemaking did not consider whether the polar bear is "below its optimum sustainable population," as required for the designation of a species as "depleted."

64.    Until the FWS's import ban determination became effective on May 15, 2008, individuals could import polar bear trophies into the United States if they complied with 16 U.S.C. § 1374(c)(5) and other applicable law.

65.    SCI and SCIF and members of SCI are harmed and aggrieved by this final action because members of SCI cannot import legally harvested polar bears from Canada. Further, lost will be the conservation benefits of the sport hunting that will no longer occur if an import ban is in place. No other remedy at law exists.

66.    These actions by the Secretary constitute a violation of the MMPA and the APA. 5 U.S.C. §§ 706(2), 553.

67.    The remedies requested in this Complaint would remedy SCI and SCIF's and SCI's members' injuries, as outlined in this Complaint.

**Fourth Claim for Relief**
**(MMPA Import Ban Only Applies to Animals Taken While**
**Designated a "Depleted Species")**
**Violation of the APA and MMPA**

68.    SCI and SCIF reallege and incorporate by reference all the allegations of this Complaint, as though fully set forth below.

69.    The FWS's determination that the importation of polar bear trophies legally hunted in Canada is prohibited by the MMPA and the application of this prohibition to the import of polar bears hunted before the polar bear was deemed a "depleted species" is arbitrary and capricious and is contrary to law.  The provisions of the MMPA that prohibit the importation of "depleted" species only applies to particular animals "taken from a species or population stock which the Secretary has, by regulation published in the Federal Register, designated as a depleted species or stock."  16 U.S.C. § 1372(b)(3); *Id.* § 1371(a)(3)(B).  This prohibition does not apply to individual polar bears (i.e., trophies) harvested before the FWS listed the polar bear as threatened on May 15, 2008, and, under the FWS's position, deemed "depleted" under the MMPA as of that date.

70.    If the Final Rule is deemed to be a "designation" of the polar bear as a "depleted species," the import ban triggered by such "designation" does not apply to animals taken before such designation on May 15, 2008.  These animals were "taken from" a species that was not deemed or designated as "depleted" at the time of the taking.

71.    On information and belief, the FWS is refusing to process or accept applications for polar bear import permits, even if the applicant harvested the animal before May 15, 2008.

72.     Until the FWS's import ban determination became effective on May 15, 2008, individuals who harvested before May 15, 2008, could import polar bear trophies into the United States if they complied with 16 U.S.C. § 1374(c)(5) and other applicable law.

73.     SCI and SCIF and members of SCI are harmed and aggrieved by this final action because members of SCI cannot import from Canada polar bears legally harvested before May 15, 2008, and the conservation benefits of that sport hunting will be lost.  No other remedy at law exists.

74.     These actions by the Secretary constitute a violation of the MMPA and the APA.  5 U.S.C. § 706(2).

75.     The remedies requested in this Complaint would remedy SCI and SCIF's and SCI's members' injuries, as outlined in this Complaint.

**VII.    PRAYER FOR RELIEF**

For the reasons stated above, SCI and SCIF respectfully request that the Court grant the following relief:

1.     Declare that the listing of the polar bear as threatened under the ESA does not create a bar to the import of sport-hunted polar bear trophies into the United States if otherwise legal under applicable law;

2.     Declare that the import prohibition contained in the MMPA, if it is deemed to apply generally because the FWS listed the polar bear as "threatened" on May 15, 2008, does not apply to applicants who harvested a polar bear before May 15, 2008, as these polar bears were not "taken" from a species that was deemed "depleted" at the time of the taking.

3.  Set aside those portions of the Final Rule declaring or establishing that by virtue of the listing of the polar bear as a threatened species under the ESA, sport-hunted polar bear trophies cannot be imported into the United States under the MMPA.

4.  Set aside those portions of the Final Rule declaring or establishing that by virtue of the listing of the polar bear as a threatened species under the ESA, sport-hunted polar bear trophies harvested before May 15, 2008, cannot be imported into the United States under the MMPA.

5.  Enjoin the FWS from refusing to process polar bear import applications due to the listing of the polar bear as a threatened species under the ESA and order the FWS to continue to process such applications;

6.  Award SCI and SCIF the costs of litigation, including reasonable attorneys fees;

7.  Award SCI and SCIF such other relief that is just and proper.

Dated this 23rd day of May, 2008.

Respectfully submitted,


_/s/ Douglas S. Burdin_____
Douglas S. Burdin
(D.C. Bar No. 434107)
Anna M. Seidman
(D.C. Bar No. 417091)
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
dburdin@safariclub.org
aseidman@safariclub.org


Counsel for
Safari Club International and
Safari Club International Foundation

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Safari Club International, Safari Club International Foundation

1001

### DEFENDANTS

Dirk Kempthorne, H. Dale Hall, U.S. Fish and Wildlife Service

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF     11001
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED
AT...

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Douglas S. Burdin
Safari Club International
501 Second St., NE
Washington, D.C. 20002
202-543-8733

Case: 1:08-cv-00881
Assigned To : Sullivan, Emmet G.
Assign. Date : 5/23/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◎ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.   CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ⊗ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☒ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ⊗ E. *General Civil (Other)*     OR     ○ F. *Pro Se General Civil* |
|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

6

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C. 702. Violation of APA. Rule banning import of polar bears contrary to Marine Mammal Protection Act.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ Check YES only if demanded in complaint<br>**JURY DEMAND:**  YES ☐  NO ☐ |
|---|---|---|

**VIII. RELATED CASE(S) IF ANY** N.H.    (See instruction)    YES ⊗    NO ☐    If yes, please complete related case form.

DATE  May 23, 2008    SIGNATURE OF ATTORNEY OF RECORD  *Douglas S. Burdin*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.